IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| EMIL DIMITROV GOSPODINOV, <br><br> Plaintiff, <br><br> v. <br><br> DONALD HUDSON, DR. ZORAN VUKCEVIC, and MICHAEL KRUGER, <br><br> Defendants. | Case No. 3:18-cv-50314 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Emil Gospodinov brings this *Bivens* action against prison medical doctor Dr. Vukcevic, Warden Hudson, and Health Services Administrator Krueger. All three defendants were employed by USP Thomson when Gospodinov was an inmate there. He alleges that the Defendants violated his Eighth Amendment rights by failing to provide him adequate medical care while he was in prison. The Defendants brought this motion for summary judgment arguing that Gospodinov's claims are an impermissible extension of *Bivens*. The Defendants also assert that Gospodinov failed to provide sufficient evidence to support a constitutional claim of deliberate indifference. Alternatively, they argue qualified immunity shields them from liability. For the reasons explained below, the Defendants' motion for summary judgment is granted.

1

I. Background

**<u>Chronic Neck and Back Pain</u>**

The following facts are taken from the parties' joint statement of facts, which are undisputed. SOF, Dkt. 117. In September 2016, Emil Gospodinov pled guilty to conspiracy to commit wire fraud. SOF ¶ 4. Before his self-surrender date in March 2017, Gospodinov was involved in a serious motor vehicle accident and suffered physical injuries that delayed his surrender date. Id. On October 31, 2017, Gospodinov surrendered to USP Thomson and arrived with his medical file that detailed his injuries from the accident, and the file incorporated into his Bureau of Prisons (BOP) records. SOF ¶ 6. The records indicated that he had cervical disc protrusions and a lumbar spine herniation. SOF ¶ 5. Gospodinov's pre-incarceration doctor ruled out surgical treatment, but recommended physical therapy, and naproxen and cyclobenzaprine for pain medications. Id. At his initial health screening at USP Thomson, Gospodinov was prescribed naproxen, but not cyclobenzaprine because it was not part of the BOP's national formulary list that guides medications prescribed and administered to inmates. SOF ¶ 8. Gospodinov was willing to consider alternative medications, and the BOP pharmacist recommended formulary alternatives for cyclobenzaprine. Id. Gospodinov could also purchase other prescription and non-prescription pain medications at the prison commissary on a weekly basis. SOF ¶ 9.

On November 8, 2017, Dr. Vukcevic documented Gospodinov's health problems after performing an admissions history and physical examination on him.

2

SOF ¶ 11. At this appointment, Dr. Vukcevic referred Gospodinov for an offsite radiology exam, offsite physical therapy consultation, ordered a low bunk assignment, and restricted the types of work he was permitted to perform. Id. Gospodinov had five medical appointments in December 2017 to address continued complaints of low back pain, receiving x-ray imaging and a physical therapy consultation that recommended a home exercise program. SOF ¶¶ 13–17. Dr. Vukcevic also prescribed acetaminophen with codeine, but Gospodinov did not take the medication. SOF ¶ 17. In addition, Dr. Vukcevic enrolled Gospodinov in an orthopedic chronic care clinic and attempted to order cyclobenzaprine but it was again disapproved as a non-formulary medication. Id. Gospodinov's low bunk assignment, restrictions on work and physical activities, and use of a double mattress pad were continued throughout Dr. Vukcevic's employment at USP Thomson, which ended on June 22, 2018. SOF ¶¶ 18, 32, 33, 45.

**Hemorrhoidal Complaints**

When Gospodinov first reported blood on his toilet paper and constipation to a nurse in December 2017, he was instructed to purchase fiber and stool softener medications from the commissary, adjust his diet, and was provided with cards to test for occult blood. SOF ¶ 13. On January 9, 2018, Gospodinov reported there was still blood in his stool and a fecal occult blood test returned positive. SOF ¶¶ 18–19. On January 11, 2018, Dr. Vukcevic performed a rectal exam that revealed internal hemorrhoids and recommended a gastroenterology consultation for consideration of

3

a colonoscopy. SOF ¶ 20. The consultation was approved on February 14, 2018, and scheduled for June 12, 2018. SOF ¶ 20; Ex. B, Dkt. 117-9 at 82.

**Gastroenterological Complaints**

Gospodinov also began experiencing epigastric discomfort and pain that he first reported to Dr. Vukcevic on January 11, 2018, who prescribed medication to address the pain. SOF ¶ 20. Gospodinov's next complaint of abdominal pain was on May 27, 2018, when he reported severe abdominal pain, distention, pressure, cramping, fullness, nausea, and dizziness. SOF ¶ 34. Gospodinov stated that he had not taken any over-the-counter medications for his abdominal pain. Id. A nurse's examination documented that contrary to Gospodinov's reported complaints, his abdomen was soft, not rigid, and not distended. Id. The nurse prescribed pain medication and scheduled him a follow up exam for the next day, May 28, 2018. Id. But early in the morning of the following day, instead of a follow up exam, Gospodinov was transported to an emergency room for abdominal pain. SOF ¶ 35. A CT scan of his abdomen and pelvis revealed a small kidney stone, gallbladder stone, and constipation. Id. Gospodinov was not admitted to the hospital and discharged back to USP Thomson. Id. Dr. Vukcevic reviewed the emergency room physician's report, and following the outside physician's recommendation, prescribed and recommended various medications, recommended a consultation for a gallbladder ultrasound, and enrolled him in the prison's gastrointestinal chronic care clinic. SOF ¶ 36.

**Administrative Review**

As part of the administrative remedies process within USP Thomson, Assistant Health Administrator Kruger and Warden Hudson receive administrative resolution requests from inmates. SOF ¶¶ 64–65. Neither Kruger or Hudson were medical providers, so they rely on the clinical staff to make clinical decisions and therefore would not participate in medical decisions. SOF ¶¶ 64–67. The approval for any medical decisions, including specialist referrals and consultations, non-standard medication requests, and outside treatments were made by the Utilization Review Committee (URC). SOF ¶¶ 23, 39, 40, 67, 68. In response to Gospodinov's complaints, Kruger and Hudson testified that there were no reasons to believe that Gospodinov's was receiving inadequate medical care because of the multiple methods and levels of treatment provided to him. SOF ¶ 67.

**II. Legal standard**

A successful motion for summary judgment demonstrates that there is no genuine dispute of material fact and judgment is proper as a matter of law. A party opposing summary judgment must proffer specific evidence to show a genuine dispute of fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non–movant when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non–movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the existence of just *any* disputed facts will not defeat an otherwise proper motion for summary judgment. *Borcky v.*

*Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). Rather, the disputed facts must be both "genuine" and "material." *Id*. A fact is material if it might affect the outcome of the suit under governing law. *Id.* Summary judgment is appropriate only when the court determines that "no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

A party opposing summary judgment "is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, but not every conceivable inference." *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). The court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). But mere speculation or conjecture will not defeat a summary judgment motion. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016). If the nonmoving party fails to establish the existence of an element essential to his case, summary judgment must be granted for the moving party. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996); *Brazkinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993) (the moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof.")

### III. Analysis

The Defendants argue they are entitled to summary judgment based on three theories. First, Gospodinov's claims present a new *Bivens* context that is foreclosed

by the Supreme Court's decisions in *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017); *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and *Egbert v. Boule*, 142 S. Ct. 1793 (2022). Second, no reasonable jury could find that the medical treatment the Defendants provided Gospodinov amounted to deliberate indifference. Finally, they are shielded from liability based on the doctrine of qualified immunity.

### a. Bivens Claim

Gospodinov brings a *Bivens* claim against the Defendants, alleging that while he was an inmate in USP Thomson the Defendants violated his constitutional rights under the Eighth Amendment by failing to provide him with adequate, timely, or proper medical care for his preexisting chronic neck and back pain, hemorrhoids, and gastroenterological issues.

Generally, a plaintiff's only form of relief for violations of constitutional rights against federal employees, acting under the color of federal law, is a *Bivens* claim. *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003) ("[A]n action brought pursuant to § 1983 cannot lie against federal officers acting under color of federal law. . ."); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court created an implied cause of action under the Fourth Amendment for constitutional violations committed by federal officials. *Bivens*, 403 U.S. 388. The Supreme Court later recognized implied causes of actions in two other contexts: a gender discrimination claim under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and an Eighth Amendment cruel and unusual punishment claim in the prison context.

7

*Carlson v. Green*, 446 U.S. 14, 19 (1980). In *Ziglar v. Abbasi*, the Supreme Court curtailed *Bivens* claims stating that "three cases—*Bivens, Davis,* and *Carlson*— represent the only instances in which the Court has approved of an implied damages remedy," and any further expansion of the *Bivens* remedy beyond existing Supreme Court precedent constitutes a "disfavored judicial activity." 137 S. Ct. at 1855–57.

In determining whether to extend *Bivens* beyond its limited application, courts must engage in a two-step inquiry. *Hernandez*, 140 S. Ct. at 743. First, courts determine whether the claim arises in a new context or involves a new category of defendants. *Id.* If the first inquiry is met, then courts must determine whether any special factors counsel against extending *Bivens* to cover the new context. *Id.*

Defendants argue that Gospodinov's *Bivens* claim should be dismissed because it presents a new context and special factors counsel hesitation in creating a new *Bivens* remedy. Mot. for Sum. Judg., Dkt. 124.

The first step is not an onerous one. The Court must determine whether Gospodinov's claim involves a new context or whether it presents the same context as one of the three previously recognized *Bivens* claims. A case presents a new *Bivens* context if it is "different in a meaningful way from previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1859. In *Abbasi*, the Supreme Court provided a non-exhaustive list of meaningful differences that make a given context a new one, such as an officer's rank, the constitutional right at issue, the generality or specificity of the official action, and the statutory or legal mandate under which the officer was

8

operating. *Id.* at 1860. A new context includes a new category of defendants. *Hernandez*, 140 S. Ct. at 743. If there is even a single "reason to pause before applying *Bivens* in a new context" or to a new class of defendant, a court may not recognize a *Bivens* remedy. *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Hernandez*, 140 S. Ct. at 743).

Gospodinov's claim for inadequate medical care has significant parallels with the previously recognized *Bivens* claim raised in *Carlson*, because they both implicate the Eighth Amendment for inadequate medical care received by a federal inmate. 446 U.S. at 19. Yet the Defendants argue that Gospodinov's claims would be an unauthorized expansion of *Bivens* that has been foreclosed by *Egbert,* 142 S. Ct. 1793. But the claim against Dr. Vukcevic is not a new context and therefore not foreclosed by *Egbert* or *Abbasi*, because of the significant parallels between Gospodinov's claim and *Carlson*. Both claims arise under the Eighth Amendment in the form of inadequate medical care at a federal prison, and both claims are against a prison medical official. Thus, Gospodinov's claim against Dr. Vukcevic does not implicate a new *Bivens* context and Dr. Vukcevic is not entitled to summary judgment on this ground.

Whether a *Bivens* claim exists against non-medical defendants, such as Hudson and Kruger in this case, need not be addressed. As Defendants argue both in the context of *Bivens* and the underlying merits, Hudson and Kruger lacked the requisite personal involvement to be liable. Additionally, as discussed later, Gospodinov was not treated with deliberate indifference, so he has no claim against

9

these non-medical defendants. As a result, the Court declines to address whether the special factors counsel against finding a *Bivens* claim against the non-medical defendants—Hudson and Kruger.

## b. Deliberate Indifference

The Court now turns to the merits of Gospodinov's claims against the Defendants. Prisoners have a right to receive adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). As to the first element, the Defendants address the question of whether Gospodinov's medical conditions were sufficiently serious with a perfunctory argument that the Court will not consider, so the Defendants have waived any argument to the contrary.[1] *U.S. v. Berkowitz*, 927 F.2d 1376, 1383 (7th Cir. 1991). Therefore, the Court will treat Gospodinov's medical conditions as sufficiently serious, and our focus now turns to whether the Defendants were deliberately indifferent with their response to his serious medical conditions.

A prison official acts with deliberate indifference only when he "*actually* [knows] of a substantial risk of harm." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021)). This is a high bar, "because it requires a showing [of] something

---

[1] Iain D. Johnston, Standing Order on Failure to Respond, https://www.ilnd.uscourts.gov/judge-info.aspx?IuUaWzNcEoPWNpdOx+5lSeRQvpEAF5l/

10

approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brown*, 670 F.3d 816, 821 (7th Cir. 2012)). Negligence, gross negligence, or even tortuous recklessness is not enough. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Medical malpractice, and merely disagreeing with a doctor's medical judgment does not amount to deliberate indifference. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). The Constitution does not prescribe any specific course of treatment. *Id.* at 697. However, if a prison doctor chooses "an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Petties*, 836 F.3d at 720 (quoting *Estelle*, 429 U.S. at 104 n.10). "But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently." *Dean*, 18 F.4th at 241; *Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim."). Deliberate indifference may be inferred when a prison medical provider's treatment decisions are "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (finding deliberate indifference where the evidence showed the treatment was "blatantly inappropriate.").

11

Gospodinov has not provided evidence that would allow a reasonable jury to infer that he suffered from constitutionally inadequate medical care while in USP Thomson, or that the Defendants were deliberately indifferent to Gospodinov's medical needs. Gospodinov's medical needs can be categorized in two distinct ways. First is his chronic neck and back pain that originated from a pre-incarceration accident. Second are Gospodinov's gastroenterological pain and hemorrhoids. The Defendants argue the claims are based Gospodinov's disagreement with the medical care he received and a personal preference for a different treatment.

**i. Chronic Neck and Back Pain**

Gospodinov claims that he experienced additional pain and suffering with his chronic neck and back issues because the Defendants provided him with inadequate pain management by only giving him one of his two preferred medications and failed to provide him with a more comprehensive physical therapy treatment. Gospodinov also asserts that the Defendants were aware that the treatments he received were inadequate, and therefore had knowledge of a constitutional violation and failed to respond appropriately. But Gospodinov does not provide any evidentiary support to buttress his claims that the course of treatment he received for his neck and back pain was contrary to accepted professional standards or so blatantly inappropriate for his needs that it showed a lack of professional judgment. *White v. Woods*, 48 F.4th 853, 862 (7th Cir. 2022); *Norfleet,* 439 F.3d at 396; *Pyles*, 771 F.3d at 409. In fact, Gospodinov solely relies on his own testimony which is not sufficient to create a genuine dispute of material fact for trial and defeat a motion

for summary judgment. *Ortiz*, 94 F.3d at 1124; *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (summary judgment is the "put up or shut up moment in a lawsuit.").

In contrast, the record is replete with evidence of the abundance of medical care provided to Gospodinov, including regular medical appointments (39 times from October 2017 to April 2019), prescription and non-prescription pain medications, physical therapy exercise programs, low bunk assignments, work restrictions, x-rays, MRIs, and outside consultations with specialists. Still, Gospodinov complains that because he did not receive cyclobenzaprine, he received inadequate treatment. But the record shows that the cyclobenzaprine prescription was disapproved because it was not on the BOP's formulary list, and instead he received formulary alternatives. SOF ¶¶ 8, 10. Dr. Vukcevic, despite knowing cyclobenzaprine was previously disapproved, tried to order it for Gospodinov three months later, but it was once again denied as a non-formulary medication. SOF ¶ 18. Dr. Vukcevic's persistence in attempting to prescribe Gospodinov the cyclobenzaprine is further evidence that he was not indifferent to Gospodinov's medical needs.

No reasonable jury would find that the variety of medical treatment Gospodinov received throughout his incarceration at USP Thomson "deviated so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021). The comprehensive nature and various degrees of treatment provided to

13

Gospodinov shows that the Defendants were not indifferent to his pain, but instead took an alternative treatment approach that Gospodinov felt was not sufficient. Gospodinov clearly disagrees with the type of treatment he received, but disagreeing with a treatment plan does not amount to a constitutional violation. *Jackson*, 541 F.3d at 697. At most, the Defendants were negligent to the severity of Gospodinov's pain, but this too is not a constitutional violation. *Petties*, 836 F.3d at 728.

**ii. Gastroenterological Pain and Hemorrhoids**

Next, Gospodinov claims that the delays he experienced in receiving treatment for his gastroenterological pain and hemorrhoids was inadequate medical treatment that violated his constitutional rights. Specifically, he takes issue with the time it took to schedule him for a consultation with an outside specialist. The sequence of events for his gastroenterological problems is as follows: Gospodinov first reported blood in his stool to a nurse on December 11, 2017, and was instructed to take fiber or stool softeners, adjust his diet, and was given stool cards to test for occult blood. SOF ¶ 13. On January 3, 2018, he saw Dr. Vukcevic who ordered a fecal occult blood test. SOF ¶ 18. On January 9, 2018, the test returned positive and Dr. Vukcevic scheduled a follow up appointment with Gospodinov. SOF ¶ 19. On January 11, 2018, Gospodinov had a follow up appointment where Dr. Vukcevic performed a rectal examination that revealed internal hemorrhoids and recommended that a gastroenterology consultation be approved by the URC so that Gospodinov could be considered for a colonoscopy. SOF ¶ 20. The consultation was

approved on February 14, 2018, approximately one month after Dr. Vukcevic's recommendation. After the consultation was approved, Gospodinov was scheduled to see an outside gastroenterologist on June 12, 2018. SOF ¶ 42.

Gospodinov argues that when a physician delays, even if briefly, in referring an inmate to a specialist, deliberate indifference may be found. Resp. to Mot. for Sum. Judg. at 22. Gospodinov admits that "delays in scheduling Plaintiff's consultations with specialists were affected by the availability of openings, limitations set per each provider, and BOP transportation logistics and staffing," but argues that "those scheduling delays do not explain why Defendant Vukcevic took a month to order the consultation." Id. at 24–25. While it is true that prolonging an inmate's suffering by delaying medical treatment can constitute deliberate indifference, *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015), Gospodinov has not provided any evidence that Dr. Vukcevic's treatment plan was inadequate or that it was necessary to refer him to an outside specialist sooner.[2] Rather, the record shows that Dr. Vukcevic initially took a conservative treatment approach with medication, and gradually intensified the treatment and diagnostic measures by performing a rectal exam, and finally recommending an outside consultation for a colonoscopy. These steps hardly demonstrate a reckless disregard for Gospodinov's well-being, and there is no evidence that Dr. Vukcevic ignored the gravity of his condition or "slow-walked" his treatment plan. *Reck v. Wexford Health*

---

[2] Gospodinov points to the fact that he had non-urgent, elective, gallbladder removal on January 3, 2019, as evidence of an improper delay in medical treatment. However, the record shows that Dr. Vukcevic left employment at USP Thomson on June 22, 2018. SOF ¶45. And there is no evidence that gallbladder removal was necessary or proper before Dr. Vukcevic's departure.

*Sources, Inc.*, 27 F.4th 473, 484–85 (7th Cir. 2022) (affirming summary judgment for defendants on an Eighth Amendment deliberate indifference claim when a prison doctor initially took a conservative treatment approach before considering a consultation with a gastroenterologist for a colonoscopy and waited three months to make a referral to a gastrointestinal specialist). Further demonstrating a lack of inadequate treatment or indifference to Gospodinov's medical needs, the outside gastrointestinal specialist did not make any changes to the medications Dr. Vukcevic prescribed nor did he criticize the care that was given to Gospodinov. SOF ¶ 42. The absence of evidence provided by Gospodinov would not allow a reasonable jury to conclude Dr. Vukcevic's acted with deliberate indifference or that the treatment plan "deviated so substantially from accepted professional judgment that no reasonable physician would reach the same judgment" and there was total unconcern for Gospodinov's welfare in the face of serious risks. *Thomas*, 991 F.3d at 772; *Rasho*, 22 F.4th at 710.

The non-medical Defendants argue that they are also entitled to summary judgment because they cannot be held liable based on respondeat superior and are only liable if they were personally responsible for Gospodinov's injury. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("[L]iability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") Gospodinov argues that his claim against the non-medical Defendants is not based solely on their supervisory roles, but also for their own inaction in failing to address his serious medical needs. But the only evidence that Gospodinov provides to

16

support his contention is the prison administrative complaints he submitted to the non-medical Defendants and Gospodinov claims his submission of administrative complaints satisfies the subjective component of his Eighth Amendment claim that they intentionally or recklessly disregarded his pain and suffering.[3] However, the record shows that both non-medical Defendants did not ignore Gospodinov's administrative complaints, they reviewed them and found no evidence of medical indifference. SOF ¶¶ 64–66. Therefore, the non-medical Defendants cannot be said to have acted with deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (finding no deliberate indifference when a non-medical professional investigated complaints). Further, the non-medical Defendants were entitled to believe that Gospodinov was in capable hands, as he was under the care of medical experts and therefore deferring to the medical expert's medical judgment was proper. *Arnett*, 658 F.3d at 755–56; *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (Non-medical professionals may defer to the professional judgment of the facility's medical officials on questions of prisoner's medical care and do not act with deliberate indifference so long as they did not ignore the prisoner's complaints).

      Because Gospodinov has failed to show that any of the Defendants were deliberately indifferent to his medical needs, their motion for summary judgment is granted.

---

[3] Curiously, Gospodinov testified that Hudson was not specifically deliberately different to his medical conditions. SOF ¶ 69.

**c. Qualified Immunity**

Alternatively, the Defendants argue that qualified immunity shields them from liability because the evidence fails to show a constitutional violation for deliberate indifference to a serious medical need, and it was not clearly established that Gospodinov had a constitutional right to disagree with the delivery of his medical care at USP Thomson. Mot. Sum. Judg., at 19. But Gospodinov argues that the Defendants are not entitled to qualified immunity because the deliberate indifference standard for medical mistreatment is clearly established, and a reasonable jury could find that the Defendants were aware that he was receiving inadequate medical care and nonetheless continued the same treatment.

Qualified immunity shields government officials "from individual liability for civil damages under 42 U.S.C. §1983 . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bradley v. Vill. of Univ. Park*, No. 22-1903, 2023 U.S. App. LEXIS 2732, at *29 (7th Cir. Feb. 3, 2023); *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016). When presented with a qualified immunity argument, the court "must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether that right was clearly established at the time of defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). "If either inquiry is answered in the negative, the defendant official," is protected by qualified immunity. *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018).

18

Because the Court has concluded that there was no constitutional violation under the Eighth Amendment, no further analysis of the qualified immunity argument is necessary. *Gatzimos v. Garrett*, 431 F. App'x 497, 502 (7th Cir. 2011).

## IV. Conclusion

For the above reasons, the Defendants are entitled to summary judgement on the single count against them. No reasonable jury could find that Dr. Vukcevic acted with deliberate indifference when treating Gospodinov. Moreover, no reasonable jury could find that Hudson and Kruger acted with deliberate indifference to Gospodinov's medical needs or complaints, or that they even had sufficient personal involvement. Because there was no constitutional violation, the Defendants are entitled to qualified immunity.

Date: June 22, 2023

_____
Honorable Iain D. Johnston
United States District Judge